UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

MICHELE STEFANSKI,

    Plaintiff,

v.                                                                                             Case No. 8:22-cv-604-CPT

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.
_____/

**O R D E R**

    The Plaintiff seeks judicial review of the Commissioner's denial of her claims for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI). For the reasons discussed below, the Commissioner's decision is affirmed.

I.

    The Plaintiff was born in 1970, has a college education, and has past relevant work experience as a waitress and leasing agent. (R. 24, 56–61, 329, 333). In April 2020, the Plaintiff applied for DIB and SSI, alleging disability as of August 2017 due to seizures, schizophrenia, generalized anxiety disorder, major depressive disorder, and degenerative disc disease. (R. 299–306, 332). The Social Security Administration (SSA) denied the Plaintiff's applications both initially and on reconsideration. (R. 176–82, 186–92, 199–211, 215–27).

At the Plaintiff's request, an Administrative Law Judge (ALJ) conducted a hearing on the matter in August 2021. (R. 44–82, 228–29). The Plaintiff was represented by counsel at that proceeding and testified on her own behalf. (R. 44, 50–71, 74–77). A vocational expert (VE) also testified. (R. 71–74, 77–81).

In a decision issued in October 2021, the ALJ determined that the Plaintiff (1) had not engaged in any substantial gainful activity since her alleged onset date in August 2017; (2) had the severe impairments of obesity, epilepsy, bipolar I disorder, major depressive disorder, generalized anxiety disorder, unspecified neurocognitive disorder, and a left shoulder humeral head fracture; (3) did not, however, have an impairment or combination of impairments that met or medically equaled the severity of any of the listings;[1] (4) had the residual functional capacity (RFC) to perform light work subject to certain physical, mental, and environmental limitations; and (5) based on the VE's testimony, could not engage in her past relevant work but was capable of making a successful adjustment to other jobs that exist in significant numbers in the national economy. (R. 10–26). In light of these findings, the ALJ concluded that the Plaintiff was not disabled. (R. 25–26).

---

[1] The listings are found at 20 C.F.R. Pt. 404, Subpt. P, App'x 1, and catalog those impairments that the SSA considers significant enough to prevent a person from performing any gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). When a claimant's affliction matches an impairment on the list, the claimant is automatically entitled to disability benefits. *Id.*; *Edwards v. Heckler*, 736 F.2d 625, 628 (11th Cir. 1984).

The Appeals Council denied the Plaintiff's request for review. (R. 1–6). Accordingly, the ALJ's decision became the final decision of the Commissioner. *Viverette v. Comm'r of Soc. Sec.*, 13 F.4th 1309, 1313 (11th Cir. 2021) (citation omitted).

II.

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than [twelve] months." 42 U.S.C. § 423(d)(1)(A); *see also* 20 C.F.R. §§ 404.1505(a), 416.905(a).[2] A physical or mental impairment under the Act "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

To determine whether a claimant is disabled, the Social Security Regulations (Regulations) prescribe "a five-step, sequential evaluation process." *Carter v. Comm'r of Soc. Sec.*, 726 F. App'x 737, 739 (11th Cir. 2018) (per curiam) (citing 20 C.F.R. § 404.1520(a)(4)).[3] Under this process, an ALJ must assess whether the claimant: (1) is performing substantial gainful activity; (2) has a severe impairment; (3) has a severe impairment that meets or equals one of the listings; (4) has the RFC to engage in her past relevant work; and (5) can perform other jobs in the national economy given her

---

[2] Unless otherwise indicated, citations to the Code of Federal Regulations are to the version in effect at the time of the ALJ's decision.
[3] Unpublished opinions are not considered binding precedent but may be cited as persuasive authority. 11th Cir. R. 36-2.

3

RFC, age, education, and work experience. *Id.* (citing *Phillips v. Barnhart*, 357 F.3d 1232, 1237 (11th Cir. 2004); 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4)). Although the claimant has the burden of proof through step four, the burden temporarily shifts to the Commissioner at step five. *Goode v. Comm'r of Soc. Sec.*, 966 F.3d 1277, 1278–79 (11th Cir. 2020) (citation omitted); *Sampson v. Comm'r of Soc. Sec.*, 694 F. App'x 727, 734 (11th Cir. 2017) (per curiam) (citing *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999)). If the Commissioner carries that burden, the claimant must then prove she cannot engage in the work identified by the Commissioner. *Goode*, 966 F.3d at 1279. In the end, "'the overall burden of demonstrating the existence of a disability . . . rests with the claimant.'" *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1359 (11th Cir. 2018) (quoting *Doughty v. Apfel*, 245 F.3d 1274, 1280 (11th Cir. 2001)).

A claimant who does not prevail at the administrative level may seek judicial review in federal court provided the Commissioner has issued a final decision on the claimant's disability application after a hearing. 42 U.S.C. § 405(g). Judicial review is confined to determining whether the Commissioner applied the correct legal standards and whether the decision is buttressed by substantial evidence. *Id.*; *Hargress v. Soc. Sec. Admin., Comm'r*, 883 F.3d 1302, 1305 n.2 (11th Cir. 2018) (per curiam) (citation omitted). Substantial evidence is "more than a mere scintilla" and is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. ___, 139 S. Ct. 1148, 1154 (2019) (internal quotation marks and citations omitted). In evaluating whether substantial evidence bolsters the Commissioner's decision, a court may not decide the facts anew, reweigh

the evidence, or substitute its judgment for that of the Commissioner, even if the Court finds that the evidence preponderates against the Commissioner's determination. *Viverette*, 13 F.4th at 1314 (citation omitted); *Carter*, 726 F. App'x at 739 (citing *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (per curiam)). While a court will defer to the Commissioner's factual findings, it will not defer to her legal conclusions. *Viverette*, 13 F.4th at 1313–14; *Keeton v. Dep't of Health & Hum. Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citations omitted).

III.

The Plaintiff's sole challenge on appeal is that the ALJ's RFC determination is not supported by substantial evidence because she did not properly assess the medical opinion of one of the Plaintiff's healthcare providers, Advanced Practice Registered Nurse (APRN) Katherine Padinjath. (Doc. 16).[4] After careful review of the parties' submissions and the record, the Court finds that the Plaintiff's challenge lacks merit.

A.

As noted above, the ALJ's task at step four is to determine a claimant's RFC and her ability to engage in her past relevant work. *See* 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1545, 416.920(a)(4)(iv), 416.945. To do so, the ALJ must decide given all the pertinent evidence before her what a claimant can do in a work setting despite any physical or mental limitations caused by the claimant's impairments and related

---

[4] The opinion is contained in a statement that seems to have been completed by Padinjath but that is signed by APRN Panchami Thomas in addition to Padinjath. (R. 886, 890). The ALJ refers to the opinion as having been prepared by "Katherine Panchani," which appears to be a scrivener's error. (R. 21).

5

symptoms. *Id.* In making this finding, an ALJ must consider all medical opinions and prior administrative medical findings in a claimant's case record, together with the other relevant evidence. *McClurkin v. Soc. Sec. Admin.*, 625 F. App'x 960, 962 (11th Cir. 2015) (per curiam) (citing 20 C.F.R. § 404.1527(b)); 20 C.F.R. §§ 404.1513a(b)(1), 416.913a(b)(1).

A medical opinion is a statement from a physician or other acceptable medical source concerning what a claimant may be able to do despite her impairments; whether the claimant is limited in her capacity to perform various work activities; and whether the claimant can see, hear, or use her other senses or "adapt to environmental conditions, such as temperature extremes or fumes." 20 C.F.R. §§ 404.1513(a)(2), 416.913(a)(2). A prior administrative medical finding, on the other hand, is a finding that pertains to "a medical issue made by [the SSA's f]ederal and [s]tate agency medical and psychological consultants at a prior level of review[,]" but that does not constitute an "ultimate determination about whether [the claimant is] disabled[.]" 20 C.F.R. § 404.1513(a)(5).

The Regulations governing the evaluation of medical evidence, including medical opinions and prior administrative medical findings, were amended for disability applications filed on or after March 27, 2017, as this one was. 20 C.F.R. §§ 404.1520c, 416.920c; *Simon v. Comm'r, Soc. Sec. Admin.*, 7 F.4th 1094, 1104 n.4 (11th Cir. 2021). The ALJ now determines the persuasiveness of a medical opinion and prior administrative medical finding instead of generally basing their weight on the source or consultant who offered the opinion or finding. *Compare* 20 C.F.R.

§§ 404.1527, 416.927(c) *with* 20 C.F.R. §§ 404.1520c, 416.920c.  In conducting this analysis, an ALJ must consider the following five factors: (1) supportability; (2) consistency; (3) the source or consultant's relationship with the claimant; (4) the source or consultant's area of specialization; and (5) any other pertinent factors "that tend to support or contradict a medical opinion" or a prior administrative medical finding, such as whether the source or consultant is familiar with the other record evidence or has "an understanding of [the SSA's] disability program's policies and evidentiary requirements."  *Id.* §§ 404.1520c(c), 416.920c; *see also Nixon v. Kijakazi*, 2021 WL 4146295, at *3 (M.D. Fla. Sept. 13, 2021) (citation omitted).

Of these factors, supportability and consistency are the most important.  20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2); *Nixon*, 2021 WL 4146295, at *3 (citation omitted).  Supportability addresses the extent to which a medical source or consultant has articulated record evidence bolstering her own opinion or finding, while consistency deals with whether a medical source or consultant's opinion or finding conforms to other evidence in the record.  20 C.F.R. §§ 404.1520c(c)(1), 404.1520c(c)(2), 416.920c(c)(1), 416.920c(c)(2); *Vachon v. Comm'r of Soc. Sec.*, 2022 WL 458604, at *5 (M.D. Fla. Feb. 15, 2022); *Barber v. Comm'r of Soc. Sec.*, 2021 WL 3857562, at *3 (M.D. Fla. Aug. 30, 2021) (citation omitted).  The amended Regulations require an ALJ to discuss supportability and consistency but do not obligate her to describe how she evaluated the other three factors.  20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2); *Freyhagen v. Comm'r of Soc. Sec. Admin.*, 2019 WL 4686800, at *2 (M.D. Fla. Sept. 26, 2019) (citation omitted).  In the end, the amended

7

Regulations—like their predecessors—do not preclude an ALJ from rejecting any medical opinion or prior administrative medical finding if the evidence buttresses a contrary assessment. *Freyhagen*, 2019 WL 4686800, at *2 (citing *Wainwright v. Comm'r of Soc. Sec. Admin.*, 2007 WL 708971, at *2 (11th Cir. Mar. 9, 2007) (per curiam); *Syrock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1985) (per curiam)).

B.

In this case, APRN Padinjath—who is an acceptable medical source for purposes of the applicable Regulations[5]—completed a Treating Source Statement–Psychological Conditions on the Plaintiff's behalf in May 2021. (R. 886–90). Padinjath reported in this questionnaire that she started treating the Plaintiff in August 2020 for severe bipolar disorder with psychotic features and generalized anxiety disorder. (R. 886). Padinjath opined, *inter alia*, that the Plaintiff was markedly limited in her ability to concentrate, persist, or maintain pace, and moderately limited in the remaining three areas of mental functioning.[6] (R. 888–89). Padinjath's findings also included that the Plaintiff could not maintain attention and concentration for more than five minutes before needing redirection or requiring a break; was able to maintain regular attendance and be punctual within customary tolerances; could sometimes, but not consistently, work with supervisors and the general public; could not maintain socially appropriate behavior, and would not respond appropriately to changes in

---

[5] *See* 20 C.F.R. §§ 404.1502(a)(7), 416.902(a)(7).
[6] The other three areas were understanding, remembering, or applying information; interacting with others; and adapting or managing oneself. (R. 888).

8

work settings.[7] (R. 889–90). Padinjath concluded that the Plaintiff would be off task for more than twenty-five percent of the time during a typical workday and would likely be absent from work for more than four days per month. (R. 890).

In her decision, the ALJ considered Padinjath's opinion as part of the ALJ's extensive review of the record and found that Padinjath's opinion was "not persuasive." (R. 21). Specifically, the ALJ stated:

> In May 2021, the [Plaintiff's] medical source, [APRN Padinjath] completed a questionnaire indicating that she started treating the [Plaintiff] in August 2020. The [Plaintiff's] diagnoses include bipolar disorder with psychotic features and generalized anxiety disorder. The [Plaintiff] is moderately limited in her ability to understand, remember, or apply information; moderately limited in her ability to interact with others; has a marked limitation in her ability to concentrate, persist, or maintain pace; and is moderately limited in her ability to adapt or manage oneself. [Padinjath] further opined that the [Plaintiff's] short and long term memory is moderately limited. She has moderate limitations in remembering locations and work-like procedures, understanding and carrying out very short and simple instructions, and in understanding and carrying out detailed but uninvolved written or oral instructions. She is able to maintain attention and concentration for less than [five] minutes before needing direction or requiring a break. She is not able to work consistently with the public, coworkers, and supervisors. She would likely be off task more than [twenty-five percent] of the workday and would likely miss work more than [four] days per month. *This opinion is not persuasive because it is primarily supported by findings from the [Plaintiff's] initial evaluation with [Padinjath] in August 2020 but subsequent evidence shows that [the Plaintiff] improved with treatment. Therefore[,] it is not consistent with the record as a whole, which shows that the [Plaintiff's] condition improves when consistently getting treatment.*

(R. 21) (emphasis added) (internal citations omitted).

---

[7] Padinjath conflictingly notes that the Plaintiff could sometimes, but not consistently, work with coworkers and that the Plaintiff could not work with coworkers at all. (R. 889).

9

The Plaintiff now argues that the ALJ "failed to explain *how* the record shows [the Plaintiff's mental] condition improved with treatment" after August 2020. (Doc. 16 at 14). This contention does not survive scrutiny.

Although the ALJ's evaluation of Padinjath's opinion did not include a discussion of the individual treatment records that demonstrated improvement in the Plaintiff's mental condition, the ALJ thoroughly analyzed this evidence in another portion of her decision when determining the Plaintiff's RFC. In particular, the ALJ referenced an initial psychiatric evaluation of the Plaintiff in August 2020, in which the Plaintiff exhibited good attention and concentration but a forgetful memory; an anxious and depressed mood; a labile and, at times, tearful affect; hyperverbal, rapid, and pressured speech; and poor insight and fair judgment. (R. 20, 604–05). The ALJ observed, however, that "[j]ust two weeks later at her psychiatry follow-up . . . , the [Plaintiff] appeared more calm, focused, and [her speech was] less pressured . . . compared to two weeks prior." (R. 20, 596). The ALJ further noted that roughly a month later, in September 2020, the Plaintiff experienced an "improvement in [her] hallucinations" and advised that her "medication [had] helped [her] anxiety." (R. 20, 576). The ALJ additionally commented that while the Plaintiff's attention and concentration were poor at that point, "[h]er insight and judgment were fair" and "her memory was intact." (R. 20, 576).

The ALJ next considered the Plaintiff's mental health records from one month later (i.e., October 2020) and acknowledged that the Plaintiff "was not doing as well" that month. (R. 20, 635, 644). The ALJ remarked in this respect that the Plaintiff

10

disclosed "she was more irritable, could not sleep," and had been "hallucinating recently." (R. 20, 635, 644).

The ALJ pointed out, however, that "at a psychiatry follow-up [the next month,] in November 2020, the [Plaintiff] reported that she stopped seeing things" and that "her mood was better." (R. 20, 619). The ALJ also noted that despite feeling a high-level of stress at the time due to moving and despite her attention and concentration being limited, the Plaintiff's "sleep was much better with medication and her mood was euthymic." (R. 20, 619). In addition, the record to which the ALJ cited in making these observations reflected that, during a mental status exam performed at the November 2020 follow-up visit, the Plaintiff was calm, alert, fully oriented, with appropriate appearance, congruent affect, normal speech, coherent and goal directed thought processes, reality-based thought content, intact memory, and fair insight and judgment. (R. 619).

The ALJ then turned her attention to the Plaintiff's mental health records from 2021, observing that the Plaintiff "received little treatment" that year but did "recently" create a "treatment plan" in August 2021. (R. 20, 1193–1202). According to the ALJ, the documentation from that period indicated the Plaintiff presented with "an appropriate mood." (R. 20, 1196).

Finally, the ALJ considered the Plaintiff's own self-reports from in or around this time frame, in which the Plaintiff advised that she had "a lot of friends," that she spent her free time cleaning and going to lunch with her friends, and that she largely lived independently. (R. 20, 1209–10, 1216). And while recognizing that the

11

Plaintiff's "assessments included bipolar I disorder with psychotic features" (R. 20, 1217), the ALJ also noted the Plaintiff was described during this same period as oriented and calm (albeit agitated at times), and exhibited varied attention and concentration, as well as a fair memory, judgment, and insight (R. 20, 1216).

In sum, the ALJ conducted a thorough, longitudinal examination of the evidence pertinent to the Plaintiff's mental impairments and provided specific and adequate reasons supported by substantial evidence for concluding that the Plaintiff's mental condition improved after her initial psychiatric evaluation in August 2020. Contrary to the Plaintiff's assertion, it was not necessary that the ALJ repeat the same analysis again when assessing Padinjath's opinion later in her decision. *See Rodriguez v. Comm'r of Soc. Sec.*, 2022 WL 807443, at *7 (M.D. Fla. Mar. 17, 2022) (rejecting an argument that the ALJ's persuasiveness determination was deficient where the ALJ referred to "prior portions of her decision in which she provided in-depth evaluations of the evidence of record"); *Roussin v. Comm'r of Soc. Sec.*, 2021 WL 6205948, at *10 (M.D. Fla. Dec. 16, 2021) (finding no error in the ALJ's application of the consistency and supportability factors where the ALJ's underlying findings, although not explicitly stated, "[we]re evident in light of the ALJ's decision as a whole") (internal citations omitted); *see also Rice v. Barnhart*, 384 F.3d 363, 370 n.5 (7th Cir. 2004) ("Because it is proper to read the ALJ's decision as a whole, and because it would be a needless formality to have the ALJ repeat substantially similar factual analyses at both steps three and five, . . . we consider the ALJ's treatment of the record evidence in support of both his conclusions at steps three and five.") (internal citation omitted); *Thaxton v.*

*Kijakazi*, 2022 WL 983156, at *8 (M.D. Ala. Mar. 30, 2022) ("An ALJ may refer to evidence discussed elsewhere in the decision when evaluating medical opinions or prior administrative medical findings.") (citing *Rice*, 384 F.3d at 370 n.5); *Wandoff o/b/o M.L.M v. Kijakazi*, 2022 WL 1259873, at *5 (S.D. Ga. Feb. 16, 2022) (concluding that the ALJ properly articulated her evaluation of a medical opinion where she discussed pertinent records underlying the supportability and consistency factors throughout her decision), *report and recommendation adopted*, 2022 WL 686322 (S.D. Ga. Mar. 8, 2022).

The Plaintiff alternatively argues that any alleged improvements the ALJ may have discerned in the Plaintiff's mental health after August 2020 "would have likely been the result of picking and choosing evidence, as the record overwhelmingly shows that [the Plaintiff] continued to suffer from substantial mental impairments through at least July 2021." (Doc. 16 at 14). This contention is likewise unavailing. As the above recitation of the ALJ's analysis reveals, the ALJ did not selectively "pick and choose" information in the record. Rather, as discussed previously, the ALJ reviewed both normal and abnormal findings and properly fulfilled her duty to consider the evidence in its entirety. *See Watson v. Heckler*, 738 F. 2d 1169, 1172 (11th Cir. 1984) (discussing how an ALJ must necessarily resolve conflicting medical evidence); *Scott v. Saul*, 2020 WL 1286368, at *14 (E.D.N.C. Feb. 14, 2020) (holding that the ALJ did not cherry-pick evidence in assessing opinion evidence where "the ALJ's decision reflected the ALJ's thorough review of the evidence, both favorable and unfavorable," to the

claimant's disability application), *report and recommendation adopted*, 2020 WL 1285637 (E.D.N.C. Mar. 16, 2020).

Lastly, in a further effort to undermine the ALJ's decision to discount Padinjath's opinion, the Plaintiff identifies other items in the record that she contends buttress Padinjath's findings. (Doc. 16 at 15–17). This line of argument also fails. As the Eleventh Circuit has observed, "[u]nder a substantial evidence standard of review, [a claimant] must do more than point to evidence in the record that supports her position; she must show the absence of substantial evidence supporting the ALJ's conclusion." *Sims v. Comm'r of Soc. Sec.*, 706 F. App'x 595, 604 (11th Cir. 2017) (per curiam) (citing *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991) (per curiam)). Further, the Court cannot—as it referenced earlier—decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner, even if the Court finds that the evidence preponderates against the Commissioner's determination. *Land v. Comm'r of Soc. Sec.*, 494 F. App'x 47, 50 (11th Cir. 2012) (per curiam) (citation omitted); *Carter*, 726 F. App'x at 739; *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991) (citation omitted).[8] Rather, the Court's obligation is confined to

---

[8] To illustrate the flawed nature of the Plaintiff's argument, one need only look to her reliance on a March 24, 2021, mental status examination performed by a consulting physician, Dr. J. Lamour. (Doc. 16 at 16). It is true, as the Plaintiff notes, that Dr. Lamour found during his examination that the Plaintiff reported experiencing auditory and visual hallucinations, severe sleep deprivation, suicidal thoughts, and fear of others. (R. 684). What the Plaintiff leaves out, however, is that Dr. Lamour additionally determined that the Plaintiff was alert with good general understanding, and that she "d[id] not show any evidence of mood disorder or behavioral problems." *Id.* The Court reiterates that it is not its role on appeal to reweigh these pieces of evidence in relation to each other and to the entirety of the record.

determining whether the ALJ relied on sufficient evidence and applied the correct legal standards. *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996) (per curiam) (observing that courts must defer to the Commissioner's decision if it is supported by substantial evidence and if the Commissioner followed the appropriate legal standards). In the Court's view, the ALJ did so here with respect to her evaluation of Padinjath's opinion.

IV.

In light of all the above, it is hereby ORDERED:

1. The Commissioner's decision is affirmed.

2. The Clerk is directed to enter Judgment in the Defendant's favor and to close the case.

SO ORDERED in Tampa, Florida, this 30th day of March 2023.

HONORABLE CHRISTOPHER P. TUITE
United States Magistrate Judge

Copies to:
Counsel of record